THOMAS A. WOODS (SB #210050)
thomas.woods@stoel.com
COREY M. DAY (SB #311021)
corey.day@stoel.com
STOEL RIVES LLP
500 Capitol Mall, Suite 1600
Sacramento, CA 95814
Telephone: 916.447.0700
Facsimile: 916.447.4781

Attorneys for Plaintiff
EYERATE INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EYERATE INC., | Case No. |
| Plaintiff, | COMPLAINT |
| v. | **Breach of Contract**<br>**Contractual Indemnity**<br>**Declaratory Relief** |
| PONCA CITY DISPENSARY, INC., an Oklahoma Corporation (dba Chronic CO; Ponca City Dispensary; Vice Medical Cannabis [aka "Vice Stillwater"]; and, Vice Dispensary [aka "Midwest Medical Cannabis"]); KYLER LUNDGRIN, an individual; and DOE Defendants 1 through 20, inclusive, | DEMAND FOR JURY TRIAL |
| Defendants. | |

# I. COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff EYERATE INC. ("Plaintiff" or "**EYERATE**"), on its Complaint for, among other claims, breach of contract and interference with prospective economic relations against Defendants PONCA CITY DISPENSARY, INC., an Oklahoma Corporation (dba Chronic CO; Ponca City Dispensary; Vice Medical Cannabis [aka "Vice Stillwater"]; and, Vice Dispensary [aka "Midwest Medical Cannabis"]), hereinafter "**CHRONIC CO**"; KYLER LUNDGRIN ("**LUNDGRIN**"); and the DOE Defendants 1 through 20, inclusive, who are the owner, co-owners, agents, representatives, partners, and/or alter egos of CHRONIC CO. ("**Defendant Owners**").

# II. PRELIMINARY STATEMENT

1. EYERATE is a business that operates a cloud-based information aggregation platform located on its "eyeratereviews.com business dashboard" (the "**Platform**"), on which EyeRate clients, pursuant to written agreement incorporating standard online terms of service may, among other things, compose text message advertising campaigns ("**text message campaign**") to their customers who the EyeRate clients select and deliver to.

2. CHRONIC CO is an Oklahoma license-holding cannabis dispensary that, through LUNDRGIN, executed a written agreement ("**Contract**") for secured access to and use of EYERATE's Platform for text message campaigns.

3. On April 15, 2022, CHRONIC CO executed the Contract for CHRONIC CO's restricted access to use of EYERATE's Platform for its text message campaigns.

4. The Contract is <u>**Exhibit 1**</u> to this Complaint.

5. A main contention in this lawsuit is that CHRONIC CO materially breached, among other provisions, Contract Sections 1, 5-7, 12-13, and 16-17, by its acts and omissions not limited to:

- Deviating from EyeRate's Contract including its terms of service in its use of the Platform;

- Continuing to use the Platform when CHRONIC CO determined for itself and did not disclose to EYERATE that it disagreed with and was not following the terms of service;

- Sharing its unique user account log-in credentials with a third-party business without EYERATE's prior express written consent, and which unauthorized user then misused the Platform;

- Coping, republishing, transmitting, distributing, selling, licensing, and otherwise exploiting for commercial purpose and without EYERATE's prior express written permission, any part of the Platform or its content; and by,

- Deliberately submitting false reports to EYERATE that CHRONIC CO had engaged in alleged lawful and non-actionable activities on the Platform when, in reality, CHRONIC CO[1] knew that a lawsuit had been filed for different and unpermitted activity that CHRONIC CO caused to have happen through unauthorized and improper use of the Platform.

6. As described in greater detail below, CHRONIC CO's breach of contract and all Defendants' unauthorized and illegal disclosures and uses of EYERATE's platform, services, and proprietary and confidential information have resulted in EYERATE having incurred substantial economic and reputational damages, with a reasonable expectation of additional economic losses to follow over $5 million and in an amount to be proven at trial.

### III.   THE PARTIES

7. EYERATE is a Delaware corporation with its principal place of business in Elk Grove, California.

8. CHRONIC CO, on information and belief, is an Oklahoma corporation with its principal place of business located at 2128 N 14th Street Ste 3, Ponca City OK 74601. CHRONIC CO does business in the State of California, including with EYERATE in the City of Elk Grove.

9. LUNDGRIN is an individual who, on information and belief, resides in the State of Kansas and does business in the State of California, for CHRONIC CO and in the City of Elk Grove. LUNDGIN is a Director of CHRONIC CO. (See **Ex. 1, p. 1**).

10. The true names and capacities of Defendant DOES 1 through 20, inclusive, whether individual, corporate, associate or otherwise, are unknown to EYERATE, who therefore sues said Defendants by fictitious names. EYERATE will amend its Complaint to allege said DOE defendants' true names and capacities when they are ascertained. EYERATE is informed and

---

[1] See *Brady Schmitendorf, et al. v. Juicy's Vapor Lounge Inc.*, U.S. Dist. Court for the District of Kansas, Case No. 2:22-cv-02293.

believes, and based on that information and belief alleges, that each defendant designated herein is responsible in some manner for the occurrences and injuries alleged herein.

### IV.   ALTER EGO-PARTY ALLEGATIONS

11. At all relevant times, Defendants LUNDGRIN and DOES 1 through 20, and each of them, were an owner, co-owner, agent, representative, partner, and/or alter ego of its co-defendants, or otherwise acting on behalf of each and every remaining defendant and, in doing the things hereinafter alleged, were acting within the course and scope of their authorities as an owner, co-owner, agent, representative, partner, and/or alter ego of its co-defendants, with the full knowledge, permission and consent of each and every remaining defendant, each co-defendant having ratified the acts of the other co-defendants.

12. EYERATE is informed and believes and, upon such information and belief alleges, that LUNDGRIN and each of the defendants named as DOES 1 through 20, inclusive, were and are in some manner responsible for the actions, acts and omissions herein alleged, and for the damage caused by the defendants, and are, therefore, jointly and severally liable for the damages caused to EYERATE.

13. EYERATE is informed and believes and, upon such information and belief alleges, that each of the defendants named as DOES 1 through 20, inclusive, were, at all times herein mentioned, acting in concert with, and in conspiracy with, each and every one of the remaining defendants.

14. Wherever appearing in this Complaint, each and every reference to defendants, or to any of them, is intended to be and shall be a reference to all defendants herein, and to each of them, named and unnamed, including all DOE defendant, unless said reference provides otherwise.

15. EYERATE alleges that Defendant LUNDGRIN and Defendants DOES 1 through 20, inclusive, (hereinafter "Defendant Owners") are, and all relevant times were, owners, co-owners, or shareholders of corporate Defendant CHRONIC CO and/or promoters of CHRONIC CO. There exists, and at all relevant times existed, a unity of interest between Defendant Owners and CHRONIC CO such that any individuality and separateness between Defendant Owners and

CHRONIC CO ceased, and CHRONIC CO is the alter ego of Defendant Owners as follows:

(a) EYERATE alleges that adherence to the fiction of separate existence of CHRONIC CO as an entity distinct from LUNDGRIN and Defendant Owners would permit an abuse of the corporate privilege and would sanction fraud in that Defendant Owners caused assets to be taken from CHRONIC CO and its business partners and used without any consideration to the impact on CHRONIC CO or its business partners, all for the purpose of LUNDGRIN and Defendant Owners avoiding and preventing financial losses that would detrimentally impact LUNDGRIN and Defendant Owners, thereby rendering CHRONIC CO insolvent and unable to meet its obligations.

(b) EYERATE alleges that LUNDGRIN and CHRONIC CO's Owners have, according to the representations in the Schmitendorf Litigation, not observed any true separateness between their purportedly "separate businesses" (CHRONIC CO) and their own personal interests. CHRONIC CO is, and all times relevant was, the alter ego of LUNDGRIN and Defendant Owners and there exists and existed at all relevant times, a unity of ownership between Defendants such that any separateness has ceased to exist in that LUNDGRIN and Defendant Owners used contracts, vendors and assets of CHRONIC CO for their personal use, caused said assets of CHRONIC CO to be transferred without adequate consideration, and that they use said assets for their own personal use and benefit.

(c) EYERATE alleges that CHRONIC CO is, and all times relevant was, inadequately capitalized. Compared with the business to be done by CHRONIC CO and the risk of loss attendant thereto, capitalization was illusory or trifling.

(d) EYERATE alleges that CHRONIC CO is, and all times relevant was, a mere shell, instrumentality and conduit through which LUNDGRIN and Defendant Owners carried on their business for CHORNIC CO as they had before, prior to incorporation, exercising complete control and dominion of such business to such an extent that any individuality or separateness of CHRONIC CO and LUNDGRIN and Defendant Owners does not now, and at any time relevant, did not exist.

(e) EYERATE alleges that CHRONIC CO is, and all times relevant was, controlled, dominated, and operated by LUNDGRIN and Defendant Owners as their individual business and alter ego, in that the activities and the business of CHRONIC CO were carried out without holding Directors or Shareholders meetings, no records or minutes of any corporate proceedings were maintained, and LUNDGRIN and Defendant Owners entered into personal and interchangeable transactions with CHRONIC CO and others without requisite approvals.

(f) EYERATE alleges that CHRONIC CO is, and all times relevant was, a shell and sham, without actual capital, assets, stocks or stockholders. CHRONIC CO was conceived, intended and used by LUNDGRIN and Defendant Owners as a device to avoid individual liability and for the purpose of substituting a financially insolvent corporation in the place of LUNDGRIN and Defendant Owners. On information and belief, at no time after CHRONIC CO became incorporated was any stock authorized to be issued.

(g) EYERATE alleges that adherence to the fiction of separate existence of CHRONIC CO as an entity distinct from LUNDGRIN and Defendant Owners would permit an abuse of the corporate privilege and produce an inequitable result in that LUNDGRIN and Defendant Owners represented to EYERATE that CHRONIC CO was the true party responsible for and obligated under the Contract.

16. As a result of the acts and omissions complained of here, said Defendants LUNDGRIN and Owners are jointly and several liable for all relief sought herein against CHRONIC CO by EYERATE.

## V.   JURISDICTION AND VENUE

17. This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332, since diversity of citizenship exists between Plaintiff (Delaware/California) and Defendants (Oklahoma and Kansas), and because the amount in controversy exceeds $75,000.00. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 and under the principals of pendent jurisdiction.

18. Each of the Defendants has purposefully availed themselves of the laws of the State of California and, through CHRONIC CO and their other business(es), they engage in business in California. Each Defendant was involved in a substantial part of the events or omissions giving rise to EYERATE's claims, taking place in California.

19. Venue is proper in this judicial district because CHRONIC CO contractually agreed to the filing of litigation over the Contract <u>only in California state and federal courts</u>. Each Defendant was also involved in a substantial part of the events or omissions giving rise to EYERATE's claims in this jurisdicton. Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391 (b)(2) because this is the judicial district in which a substantial part of the events or omissions giving rise to EYERATE's claims occurred.

## VI. STATEMENT OF FACTS COMMON TO ALL CLAIMS

20. On April 15, 2022, EYERATE and CHRONIC CO, through LUNDGRIN, executed the Contract. (See Exhibit 1).

21. There are no other parties to the Contract.

22. There are no written consents or authorizations of EYERATE permitting the use of CHRONIC CO's user log-in or user account on the Platform by any one other than CHRONIC CO.

23. EYERATE has never executed any contract with LUNDGRIN that LUNDGRIN ever disclosed was meant to permit use and access to the Platform by any non-CHRONIC CO business that LUNDGRIN is associated with.

24. By signing the Contract and agreeing to the terms and restrictions therein CHRONIC CO was given a unique Platform log-in credential, user account, and was granted access to and permission to use the Platform to communicate with its own customers.

25. Contract **Section 5** among other provisions prohibited CHRONIC CO from copying or sharing any services provided to it in the Platform without Service Provider's prior written consent.

26. Contract **Section 6** restricted CHRONIC CO's use and disclosure of "Confidential Information" as that information is defined in the Contract. "Confidential Information" is and was not limited to "information relating to business and product or service plans".

27. In Contract **Section 7** CHRONIC CO agreed that EYERATE's provision of customer communication and Platform services were "dependent" on the customer (CHRONIC CO) having acquired and used its customer information "in compliance with applicable laws." The Section also expressed that:

> the Services are intended to allow [CHRONIC CO] to send electronic communications, including but not limited to text messages, only to [CHRONIC CO's] own current customers and employees who have given consent to the receipt of such communications and are provided with necessary notices in accordance with applicable law and regulations. [CHRONIC CO] agrees and acknowledges that [CHRONIC CO] is solely responsible

for its compliance with applicable law and regulations and shall not rely on the Services for any such compliance. Use of the Services does not guarantee compliance with applicable law or regulation and [EYERATE] expressly disclaims any liability for [CHRONIC CO's] non-compliance. [EYERATE] reserves the right to suspend or terminate [CHRONIC CO's] access to the Services or the messaging features if [EYERATE] believes, in its discretion, that [CHRONIC CO] has violated these Terms of Service.

28. In Contract **Section 12** CHRONIC CO warranted and represented that it had written authorization from its customers for electronic communications to them, and that it undertook any and all necessary actions in accordance with applicable law to ensure the collection and use of information contemplated by EYERATE's Terms of Service would not violate applicable law.

29. Contract **Section 12** also contained CHRONIC CO's warranty and representation that it would not use EYERATE's Platform for any illegal or unauthorized purpose.

30. Contract **Section 13** required CHRONIC CO to not disparage "or encourage or induce others to disparage" EYERATE or any of its products or services.

31. Also in **Section 13**, CHRONIC CO agreed to indemnify, defend and hold harmless EYERATE and others associated with it from:

> any and all losses, damages, liabilities, deficiencies, claims, actions, judgments, settlements, interest, awards, penalties, fines, costs or expenses of whatever kind, including reasonable attorneys' fees and the cost of enforcing any right to indemnification under these Terms of Service incurred by an Indemnified Party relating to, arising out of, or resulting from any claim, action, audit, investigation, inquiry, or other proceeding that arises out of or relates to: (a) any breach of representations, warranties, or obligations set forth in these Terms of Service by such party; and (b) the violation by such party of any third-party right, including without limitation any right of privacy, publicity rights, rights under the TCPA or intellectual property rights of third parties.

32. Contract **Section 16**, prohibited CHRONIC CO from accessing or using the Platform for any purpose other than for that which EYERATE made the Platform available – for CHRONIC CO's communications, including by text message, with existing CHRONIC CO customers who also had provided and maintained, and not revoked, requisite consent for them to be contacted with electronic communications.

33. Section 16 also prohibited CHRONIC CO from:

- unauthorized use of the Platform, including . . . *creating Client accounts* by automated means or *under false pretenses*;

- •circumventing or otherwise interfering with security-related features of the Platform, including features that prevent or restrict the use or copying of any Content or enforce limitations on the use of the Platform and/or the Content contained therein;

- •engaging in trickery, fraud, or deception to mislead EYERATE, especially in any attempt to learn account information;

- •making improper use of EYERATE's support services or submission of false reports of abuse or misconduct;

- •using any information obtained from the Platform in order to harass, abuse, or harm another person;

- •using the Platform or content on the Platform for any revenue-generating endeavor;

- •attempting to bypass any measures of the Platform designed to prevent or restrict access to the Platform, or any portion of the Platform, and;

- •harassing or annoying any EYERATE employees or agents engaged in providing any portion of the Platform to CHRONIC CO as a user.

(Emphasis added).

34. Contract **Section 17** prohibited CHRONIC CO's assignment of EYERATE's services under the Contract to another party without EYERATE's express written consent.

35. **Section 17** also included CHRONIC CO's understanding that the terms of the Contract did not and could not expressly *or impliedly* confer upon any other person *or business* any legal or equitable rights, benefits or remedies under the Contract.

36. On August 17, 2022, LUNDGRIN, under the auspices of CHRONIC CO's Contract with EYRATE, sent EYERATE an email inquiry.

37. In LUNDGRIN's email,[2] he affirmatively represented to EYERATE that in "a 'campaign' we sent out a few months back . . . [ ] we sent out a mass message to our customers informing them", not about *marketing* messages, but "a policy update.  We have since had someone reach out in regards to that the [sic] message saying that we had spammed them with messages.  Before the most recent update to the website we were able to look back at previously sent text campaigns and verify that it was in fact only sent out once.  Is there some way to pull our campaign history, so we can for sure verify that we did in fact only send the message one time?"

38. EYERATE assisted what it reasonably believed was its business partner at the time, CHRONIC CO, with answering LUNDGRIN's questions.

39. What EYERATE did not know in August 2022 was that LUNDGRIN's and Defendant Owners' *other unrelated business* had been sued one month earlier in a class action alleging that the unrelated business violated the law (the "**Schmitendorf Litigation**"), and that LUNDGRIN and the unrelated business were seeking at the time to gather information from EYERATE to fabricate a claim that EYERATE knew about, controlled and authorized the unrelated business's unlawful conduct.

40. Thus, on and before August 17, 2022, CHRONIC CO, LUNDGRIN and Defendant Owners were scheming against EYERATE to use EYERATE and its Platform to frame EYERATE for the violations of LUNDGRIN and his rouge business ("**Juicy's**") as alleged in the Schmitendorf Litigation.

41. Despite the pending Schmitendorf Litigation and August 2022 investigation or inquiry, none of CHRONIC CO, LUNDGRIN, or Defendant Owners **ever** informed EYERATE of the Schmitendorf Litigation, the allegations in the Schmitendorf Litigation concerning unwanted marketing messages, or of the need to preserve information relevant to the Schmitendorf

---

[2] Notably, LUNDGRIN's email represents that, in August 2022, he was investigating the issue of rather innocuous *CHRONIC CO, non-telemarketing* text messages having allegedly been sent from EYERATE's services platform to CHRONIC CO customers per the Contract *and* being complained about *outside* of the context of a lawsuit.  None of that, however, was true.  EYERATE would come to learn in December 2022 that LUNGRIN was not disclosing that, before his email, LUNDGRIN's other non-Contracting business had been sued for its illegal use of the Platform.

Litigation to the extent CHRONIC CO, LUNDGRIN and/or Defendant Owners caused EYERATE to unwittingly be in possession, custody or control of the same.

42. On or about November 30, 2022, EYERATE, to its complete surprise, received a subpoena for document production in the Schmitendorf Litigation.

43. In the process of understanding the subpoena, EYERATE discovered that CHRONIC CO, LUNDGRIN and Defendant Owners had shared both Platform and content information to Juicy's, attorneys, and a plaintiff's class action attorney, all without the knowledge or authorization of EYERATE.

44. Each misuse of EYERATE's Platform was meant by LUNDGRIN and Defendant Owners to generate revenue for themselves.

45. EYERATE has incurred damages, losses and expenses caused by Defendants CHRONIC CO's breaches, and LUNDGRIN and DOE Defendants' acts and omissions to act described above. Separately, EYERATE has and will continue to incur business losses caused by the aforementioned misconduct and subterfuge in the co-mingling of the operations of their businesses and personal affairs.

### VII.   CLAIMS

### CLAIM 1

**(Breach of Written Contract – all Defendants)**

46. EYERATE hereby re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1-45.

47. The Contract is a valid contract between the EYERATE and CHRONIC CO.

48. The Contract is enforceable against LUNDGRIN and Defendant Owners as alter egos and beneficiaries of CHRONIC CO.

49. The Contract was supported by adequate consideration, including by exchange of secured access to the Platform for commercial purposes and payments called for under the Contract for that access and use. (Exhibit 1).

50. EYERATE performed all of its obligations under the Contract and, to the extent it is alleged to have not performed obligations, it is excused from any performance of other alleged

obligations as a result of CHRONIC CO's breaches described above and herein.

52. CHRONIC CO materially breached the Contract provisions discussed and incorporated herein acts and omissions not limited to:

(a) Contract Section 5: sharing with others software or Platform services without EYERATE's prior written consent;

(b) Contract Section 6: using and disclosing to others "Confidential Information" as that information is defined in the Contract;

(c) Contract Section 12: using EYERATE's Platform for unauthorized purposes;

(d) Contract Section 13: disparaging EYERATE and/or its products or services;

(e) Contract Section 16: accessing and using the Platform for a purpose other than for that which EYERATE made the Platform available; on August 17, 2022 and other times, engaging in trickery, fraud, or deception to mislead EYERATE under the Contract; making improper use of EYERATE's support services and submission of false reports of abuse or misconduct; using information obtained from the Platform in order to harass, abuse, or harm; using the Platform or content on the Platform for an unauthorized revenue-generating endeavor; harassing or annoying any EYERATE employees or agents engaged in providing any portion of the Platform to CHRONIC CO as a user;

(f) Contract Section 17: assigning or transferring EYERATE's services under the Contract to another party without EYERATE's express written consent, and purporting to confer on another business rights, benefits or remedies under the Contract.

52. CHRONIC CO's breaches and failures to perform are the direct and proximate cause of EYERATEs damages, not limited to costs associated with remedying CHRONIC CO's breaches, responding to discovery in the Schmitendorf Litigation in addition to other litigation activities.

53. The full amount of Claimant's damage will be proven at hearing, and not be less than $500,000.00.

## **CLAIM 2**

**(Contractual Indemnity – all Defendants)**

54. EYERATE hereby re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1-53.

55. The Contract and Indemnity provision therein is a valid agreement and provision between the Parties. The provision is enforceable against LUNDGRIN and Defendant Owners as alter egos and beneficiaries of CHRONIC CO.

56. The Contract was supported by adequate consideration.

57. EYERATE performed all of its obligations under the Contract and, to the extent it is alleged to have not performed obligations, it is excused from any performance of other alleged obligations as a result of CHRONIC CO's breaches described above and herein.

58. For example, prior to this suit, demand was made of CHRONIC CO Director LUNDGRINs attorneys for indemnification or remediation from CHRONIC CO for the acts and omissions alleged herein, but Counsel denied the existence of CHRONIC CO and declined to remediate and prevent losses to EYERATE. Demands have been futile.

59. CHRONIC CO materially breached the Contract provisions discussed and incorporated herein by declining EYERATE's demands for indemnity, defense and to be held harmless from: CHRONIC CO's breaches of contract; (erroneous) claims; and, all of the expenses and losses incurred and to be incurred in the Schmitendorf Litigation as a result of those breaches and misrepresentations.

60. CHRONIC CO's breaches and failures to perform are the direct and proximate cause of EYERATE's losses, not limited to costs and fees associated with remedying CHRONIC CO's breaches, costs and fees associated with the Litigation, and loss of substantial financing and income associated with confidential and proprietary business transactions that CHRONIC CO cannot close in the wake of CHRONIC CO's breaches and its improper embroiling of EYERATE in the Schmitendorf Litigation.

61. The full amount of Claimant's damage will be proven at hearing, and not be less than $500,000.00.

62. Pursuant to Contract Section 13 (indemnity), EYERATE is entitled to compensation for its attorney's fees and costs associated with this case and for the Schmitendorf Litigation.

## CLAIM 3

### (Declaratory Relief– CHRONIC CO)

63. EYERATE hereby re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1-62.

64. EYERATE is a party under a written instrument, the Contract, and it now desires and needs a declaration of its rights under the Contract with respect to CHRONIC CO.

65. An actual case or controversy exists between the Parties regarding EYERATE's rights to indemnity (and to a defense and a declaration that EYERATE will be held harmless) from and against any and all losses, damages, liabilities, deficiencies, claims, actions, judgments, settlements, interest, awards, penalties, fines, costs or expenses of whatever kind, including reasonable attorneys' fees and the cost of enforcing any right to indemnification under the Contract, incurred by EYERATE relating to, arising out of, or resulting from any claim, action, audit, investigation, inquiry, or other proceeding that arises out of or relates to: (a) any breach of representations, warranties, or obligations set forth in Contract; and (b) the violation by such party of any third-party right, including without limitation any right of privacy, publicity rights, rights under the TCPA or intellectual property rights of third parties.

66. An actual case or controversy has arisen by and between EYERATE and CHRONIC CO regarding breaches of obligations and representations and warranties under the Contract by CHRONIC CO, LUNDGRIN and Defendant Owners. Additionally, and in the alternative, a claim or controversy has arisen with respect to claims made against EYERATE (in the Litigation) that third-party rights, were violated by a company under the control of CHRONIC CO or its operators and owners, LUNDGRIN and Defendant Owners who allegedly used EYERATE's Platform and services.

67. Pursuant to the Contract EYERATE is entitled to indemnity for CHRONIC's breaches and the third-party claims asserted against EYERATE in the Schmitendorf Litigation.

68. Prior to the filing of this action, EYERATE tendered and asserted its claim for indemnity, defense and to be held harmless from loses associated with said breaches and third-

party claims, and CHRONIC CO and LUNDGRIN as its Director have not accepted that tender and assertion.

69. An actual case or controversy now exists between EYRATE and Defendants requiring a declaration of rights owed to EYERATE under the Contract.

70. EYERATE requests and is entitled to a declaration and order confirming that EYERATE is entitled to a defense and indemnification from and against any and all losses, damages, liabilities, deficiencies, claims, actions, judgments, settlements, interest, awards, penalties, fines, costs or expenses of whatever kind, including reasonable attorneys' fees and the cost of enforcing any right to indemnification under the Contract, incurred by EYERATE relating to, arising out of, or resulting from any claim (including but not limited to those herein and in the Schmitendorf Litigation), action (including this case and the Schmitendorf Litigation), audit, investigation, inquiry, or other proceeding that arises out of or relates to: (a) CHRONIC CO's breaches of representations, warranties, or obligations set forth in Contract; and (b) the alleged violation third-party rights, including without limitation any right of privacy, publicity rights, rights under the TCPA or intellectual property rights of third parties (e.g., the Litigation).

## VIII.   JURY DEMAND

76. EYERATE hereby demands trial by jury on each claim for which a jury trial is afforded by law.

## IX.   PRAYER

WHEREFORE, EYARATE prays for relief as follows:

1. Compensatory damages, including but not limited to those amounts: owed and not paid to EYERATE under the Contract; expended associated with CHORNIC CO's breaches and Defendants' conduct; lost to EYERATE from confidential third-party business transactions that, but for Defendants' conduct, and in an amount to be proven at trial;

2. Indemnification in an amount equal to all losses incurred by EYERATE, not limited to those losses and expenses associated with: attorney's fees and costs associated with this action and the Schmitendorf Litigation, and in an amount to be proven at trial;

3. A declaration and order stating that EYRATE is a defense and indemnification from and against any and all losses, damages, liabilities, deficiencies, claims, actions, judgments, settlements, interest, awards, penalties, fines, costs or expenses of whatever kind, including reasonable attorneys' fees and the cost of enforcing any right to indemnification under the Contract, incurred by EYERATE relating to, arising out of, or resulting from any claim (including but not limited to those herein and in the Litigation), action (including this case and the Litigation), audit, investigation, inquiry, or other proceeding that arises out of or relates to: (a) CHRONIC CO's breaches of representations, warranties, or obligations set forth in Contract; and (b) the alleged violation third-party rights, including without limitation any right of privacy, publicity rights, rights under the TCPA or intellectual property rights of third parties.

4. Attorney's fees and costs as permitted by contract or statute as permitted by law;

5. An award of pre and post judgment interest as permitted by law, and;

6. Any further legal or equitable relief that the Court deems just and proper.

DATED: June 2, 2023                         STOEL RIVES LLP

                                            By: */s/ Thomas A. Woods*
                                            THOMAS A. WOODS
                                            COREY M. DAY
                                            Attorneys for Plaintiff
                                            EYERATE INC.